DANIEL PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
JEFFREY A. BARKER (S.B. #166327)
jbarker@omm.com
DAVID MARROSO (S.B. #211655)
dmarroso@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Defendants Top Rank, Inc., Robert Arum, Todd duBoef, Emmanuel Pacquiao, and Michael Koncz

*(Continued on Next Page)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| IN RE: PACQUIAO-MAYWEATHER BOXING MATCH PAY-PER-VIEW LITIGATION | MDL No. 2:15-ml-02639-RGK (PLAx)<br><br>[MDL No. 2639] |
| This document relates to:<br><br>TERRENCE JACKSON, on behalf of himself And all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL PACQUIAO; TOP RANK, INC.; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF; DOES 1-10 and ABC CORPS 1-10,<br><br>Defendants. | Case No. 2:15-cv-06226-RGK (PLAx)<br><br>**JOINT PRE-STATUS CONFERENCE REPORT**<br><br>Date:  November 3, 2015<br>Time:  10:00 a.m.<br>Courtroom:  850<br>Judge:  Hon. R. Gary Klausner |

*(Continued from Previous Page)*

THE BERMAN LAW GROUP
ZACHARY WEST, ESQ.
Fla. Bar. No. 71134
P.O. Box 272789
Boca Raton, FL 33427
Telephone: (561) 826-5200
Fax: (561) 826-5201

Attorneys for Plaintiff Terrence Jackson

Plaintiff Terrence Jackson ("Plaintiff") and defendants Top Rank, Inc., Robert Arum, Todd duBoef, Emmanuel Pacquiao, and Michael Koncz (collectively, "Defendants," and with Plaintiffs, the "Parties"), through their undersigned counsel, respectfully submit this Joint Pre-Status Conference Report.

## I. CURRENT STATUS OF THIS CASE

Plaintiff, a Florida resident, filed this action May 6, 2015 in the U.S. District Court for the Northern District of Florida. Plaintiff's lawsuit is one of 43 putative class actions (the "Actions") in this MDL that assert claims relating to a boxing match between Manny Pacquiao and Floyd Mayweather that took place on May 2, 2015 in Las Vegas, Nevada (the "Match"). On August 14, 2015, this case was transferred as part of this MDL. *See In re: Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, MDL No. 2639 (J.P.M.L.), Dkt. #149.

Activity in this action has been limited to Defendants requesting—and the transferor court granting—a suspension of their deadlines to respond to Plaintiff's complaint to 45 days after a consolidated complaint is filed (or lead plaintiff's counsel announces by filed notice that none will be filed). [*Jackson* Dkt. #13, 15.] No significant motion or discovery practice has occurred. Since transfer to this Court, this case (like all of the Actions) has been stayed. Thus, Defendants have yet to respond to Plaintiff's complaint.

## II. CLAIMS IN THIS CASE

*Plaintiffs' Statement Regarding the MDL Cases.* In this MDL, there are generally two types of cases: (1) **Consumer cases**: those filed on behalf of consumers who purchased the pay-per-view ("PPV") broadcast directly (through their cable provider) or indirectly (by paying admission at a third-party establishment) for: (a) violations of state consumer protection and deceptive practices laws; (b) violations of state false advertising statutes; (c) unjust enrichment / money had and received; and (d) fraud or fraudulent concealment; and (2) **Commercial cases**: those filed on behalf of commercial establishments such as

bars and restaurants that purchased commercial PPV licenses and then charged patrons cover-charges or dues to enter and watch for: (a) violations of the federal Lanham Act, 15 U.S.C. §1125 *et seq.*; (b) violations of state unfair competition laws; (c) violations of state false advertising statutes; and (d) unjust enrichment / money had and received. In addition, certain cases assert claims on behalf of live attendees and individuals who placed wagers on the fight. Plaintiffs in both Consumer and Commercial cases seek damages, restitution and other relief.

*Joint Statement Regarding the* **Jackson** *Action.* Plaintiff asserts on behalf of himself and putative class members four claims against Defendants for alleged fraudulent concealment; violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*; "conspiracy to conceal defendant Pacquiao's injuries and commit deceptive trade practices" in violation of common law and FDUPTA; and unjust enrichment. Compl. ¶¶ 26-46. Plaintiff alleges that people who paid to watch the Match and placed wagers on the Match are entitled to compensation and other relief because, according to his Complaint, after Pacquiao injured his shoulder during training for the Match, Defendants were required to (but allegedly did not) disclose the nature and extent of his injury to the public in advance of the Match. *See, e.g.*, *id.* ¶¶ 2-4, 19, 27-29. Plaintiff also alleges that Defendants made certain affirmative misrepresentations about the Match. *See, e.g.*, *id.* ¶¶ 4-6, 19.

All cases in this MDL name Pacquiao (Boxer) and Top Rank, Inc. (Promoter) as common Defendants. A number of cases also assert claims against Top Rank officers Bob Arum, Michael Koncz and Todd duBoef, as well as broadcasters and producers HBO, and Showtime, plus Mr. Mayweather (Pacquiao's opponent) and Mayweather Promotions LLC.

### III. COMPOSITION OF CLASS IN THIS CASE AND SUGGESTIONS FOR CONSOLIDATION OF CLASSES

Plaintiff seeks certification of a class that "consists of all persons who paid

for tickets to the Event[,] purchased pay per view showings or made wagers on the Event, which did not know that Defendant Pacquiao had been seriously injured prior to the Event and that the Defendant did not disclose such information to the general public or even to the Nevada Athletic Commission." *Id.* ¶ 19.

The Parties agree and recommend that this case and all others transferred already or in the future should be consolidated for pretrial purposes in this proceeding, and that this matter should be included in a consolidated complaint with the other Actions. The Parties agree that the plaintiffs in the MDL Proceeding may consolidate overlapping putative classes in their consolidated complaint, without prejudice to Defendants' right to oppose certification of such putative classes under Rule 23. It is anticipated that a Consolidated Amended Complaint would likely be filed on behalf of each type of case (*i.e.*, depending on the class and claims asserted) once a leadership structure is appointed by the Court to oversee and manage that task. It is common in a consumer protection case such as this for claims to be generally consolidated for pre-trial purposes, and not merely coordinated, with a single leadership structure being appointed to manage the case. *See, e.g.*, *In re Toyota Unintended Acceleration Mktg., Sales & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010).

## IV. ISSUES TO BE RESOLVED IN THIS CASE THAT WOULD PREVENT RESOLUTION OR SETTLEMENT

*Plaintiffs' Statement.*[1] Plaintiffs believe many factual issues are not in dispute. The Match, billed to the public as the "Fight of the Century," is now being referred to as the "Fraud of the Century" because Pacquiao did not disclose a severe shoulder injury that occurred shortly before the Match as he was required to do under the relevant boxing regulations. Thus, unbeknownst to the public, Pacquiao

---

[1] Collective proposals for case management, including the proposed schedule, have been jointly submitted and approved by plaintiffs in 32 of the Actions and were facilitated by the Zimmerman Reed and Kaplan Fox & Kilsheimer firms.

entered the Match badly injured and was unable to fully and fairly compete against his chief rival.  Plaintiffs allege that prior to the start of the Match, all Defendants were aware that Pacquiao had suffered a torn rotator cuff and that the injury would critically hinder his performance.  However, Plaintiffs allege they intentionally concealed that fact from the public in order to continue selling expensive PPV packages and avoid providing refunds or canceling the Fight.

Among other things, Plaintiffs allege that Pacquiao unlawfully deceived boxing regulators in a Nevada State Athletic Commission Pre-Fight Medical Questionnaire under penalty of perjury by checking "no" when answering questions asking if he had suffered a shoulder injury or had any serious medical illnesses or conditions that would impede his ability to fairly compete under Nevada's boxing laws.  Numerous observers also criticized Pacquiao's performance during the Fight as hampered by injury and clearly less than 100% of the former world champion's capabilities.  After the Fight, Pacquiao publicly admitted his shoulder was functioning at 60% and told reporters it was "hard to fight one-handed" but that "I didn't want to disappoint the fans so we decided to continue the fight."  On May 5, 2015, Pacquiao and Top Rank issued a press release revealing, *inter alia*, that: "During training, Manny Pacquiao suffered a right shoulder injury…. Manny continued to train and his shoulder improved, though not 100%....His shoulder wasn't perfect but it had improved in training camp."

By failing to disclose that Pacquiao was injured prior to the Match while still promoting, advertising and selling the Fight to Plaintiffs and the Class (for about $100 each) as a fair and honest sporting event between two healthy participants, Defendants deceived Plaintiffs and putative class members, who were unlawfully deprived of what they paid for and therefore damaged financially.

Plaintiffs are cognizant that resolution of dispositive motions may narrow the legal issues in this case and facilitate settlement discussions, but decline to respond to Defendants' specific legal arguments set forth below at this time because they are

premature for purposes of addressing case management.  Plaintiffs disagree with Defendants' positions and look forward to addressing them through motion practice once initial case management issues are settled.  However, if Defendants intend to invoke any purported arbitration agreements and compel arbitration they should be required to do so immediately in order to save the Parties' and the Court's resources.  Plaintiffs believe any further delay or failure to demand arbitration constitutes waiver.

*Defendants' Statement.*[2]  Although the putative class definitions and claims being asserted differ among the Actions, Defendants anticipate asserting several factual and legal defenses to Plaintiff's claims, including the following legal defenses which may dispose of this case (and other Actions) at the pleading stage.[3]

### 1.   **Failure to State a Viable Claim for Relief**

<u>No Extraterritorial Reach of State Law</u>.  Many states (like Florida) limit the geographical scope of their consumer protection laws.  *See Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330-31 (S.D. Fla. 2012).  Since no conduct is alleged to have occurred in Florida, there is no FDUPTA claim.

<u>No Cognizable Injury</u>.  Individuals who paid to watch the Match had, at most, a license to view the Match—and that is exactly what they got.  Courts have rejected claims by disgruntled viewers of sporting events, like Plaintiff, who alleged they were entitled to more.  *See, e.g.*, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Castillo v. Tyson*, 701 N.Y.S.2d 423, 425 (App. Div. 2000).

<u>No Duty to Disclose</u>.  Plaintiff's claims are based on a "duty" that does not exist: that Defendants had to disclose intimate details about Pacquiao's health to the

---

[2] Defendants dispute the veracity of the allegations in Plaintiff's Statement(s).
[3] This is not an exhaustive list.  Given the potentially differing posture of certain Defendants, some Defendants may be dismissed from the case at different points for different reasons.  Also, should any claims survive these pleading challenges, Defendants will challenge class certification on a number of grounds.

5

JOINT PRE-STATUS
CONFERENCE REPORT

public.[4] No court has recognized such a duty, as prospective viewers of any sport do not and cannot reasonably expect to see a contest between unblemished fighters or be provided with a pre-fight injury report. *Cf. Bowers v. Fédération Internationale de l'Automobile*, 489 F.3d 316, 324 (7th Cir. 2007).

<u>No Cognizable Claims for Gambling Class</u>. The gambling class claims in this case are also barred because no cognizable privity exists between plaintiffs and defendants; state and federal law forbids wagering on the outcome of a sporting event; state law precludes claims based on wagering conduct; and a failure to exhaust administrative remedies. *See, e.g., Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 466 (1999).

<u>No Actionable Misrepresentations</u>. Plaintiff fails to state a plausible claim for relief based on the purported misrepresentations at issue, as he fails to allege that he was even exposed to those misrepresentations prior to his PPV purchase. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

<u>No Specific Facts as to Many Defendants</u>. The complaint suffers from fatal pleading defects, including improper group pleading and failing to specifically identify alleged misrepresentations made by certain Defendants. *See Blair v. Wachovia Mortgage Corp.*, No. 5:11-CV-566-OC-37TBS, 2012 WL 868878, at *4 (M.D. Fla. Mar. 14, 2012). Because Plaintiffs' claims sound in fraud, *see, e.g.*, Compl. ¶¶ 26-39, they are subject to dismissal under Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

2. **Arbitration Barring Participation in Class Action Lawsuits**

Some or all of Plaintiff's individual and putative class claims on behalf of PPV purchasers are subject to arbitration. PPV purchasers entered into terms of service agreements with their cable or satellite providers, many of which include

---

[4] This wrongly assumes all Defendants had identical knowledge and identical duties with respect to Pacquiao's health.

arbitration provisions expressly barring class actions.[5] Even the non-signatory *Jackson* Defendants are entitled to enforce such provisions in these circumstances. *See Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631-32 (2009).

### 3. Lack of Personal Jurisdiction

MDL courts "appl[y] the law of the transferor forum to determine personal jurisdiction." *In re: Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1106 (S.D. Cal. 2011). No Defendant is domiciled in Florida, *see* Compl. ¶¶ 12-16, and Plaintiff otherwise fails to specify how any Defendant has sufficient contacts with Florida for personal jurisdiction.

## V. THE PARTIES' PROPOSAL FOR HANDLING AND ADMINISTERING THIS MDL PROCEEDING

### A. Filing of Consolidated Complaint

For the reasons set forth above, the Parties recommend and request that the Court order plaintiffs in this MDL to file one or more consolidated complaints depending on the class and claims asserted.

### B. Scheduling Issues and Resolution of Defendants' Motion(s) to Dismiss and Other Case-Dispositive Challenges

The Parties' proposed schedule is attached hereto as Exhibit A.

### C. Stay of Discovery

*Plaintiffs' Statement.* Plaintiffs believe discovery should commence seven days after appointment of lead counsel and do not believe there is any legal authority mandating a stay of discovery in a consumer protection MDL such as this, even when motions to dismiss are contemplated. Discovery has already been stayed for many months pending the MDL and any further delays will only prejudice Plaintiffs further, particularly given the tight deadlines for filing for class certification. Consolidation of the actions with discovery overseen by Plaintiffs'

---

[5] *See, e.g.*, Verizon Agreement ¶¶ 2, 17(a), (c), *at* http://www.verizon.com/idc/groups/public/documents/adacct/fios_tv_tos_08211.pdf (last visited Oct. 9, 2015).

lead counsel will also obviate Defendants' concerns about duplication. Defendants' vague proposals about staying all discovery while phasing motions to dismiss and motions to compel arbitration that may only apply to a small portion of Plaintiffs and causes of action in the MDL prejudice all Plaintiffs and will only cause significant delay in resolving this litigation. Plaintiffs also believe Defendants should immediately produce any core documents that Defendants may easily assemble prior to the commencement of formal discovery, such as documents already produced to a regulatory agency as part of its investigation into the allegations raised in this case. Such an initial production may help target discovery by identifying potential deponents, document custodians and search terms, and may facilitate settlement discussions. Plaintiffs will oppose any formal motions to stay.

*Defendants' Statement.* Defendants ask that all discovery be stayed until the Court rules on Defendants' motion(s) to dismiss and/or motion(s) to compel arbitration. A stay is appropriate and will minimize expense to all concerned because any discovery is premature and unnecessary until the issues raised in these motion(s) are resolved. Moreover, failure to stay discovery would lead to duplicative discovery, substantial coordination issues as the parties have to address 43 separate cases, prejudice to those Defendants with few-to-no allegations against them who might be dismissed early on, and other inefficiencies which would impose a costly burden on Defendants, plaintiffs and the Court. Courts have broad discretion to stay—and routinely do stay—discovery while a motion to dismiss or motion to compel arbitration is pending. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2127577, at *2 (N.D. Cal. July 24, 2007); *Steiner v. Apple Computer, Inc.*, No. C 07-4486 SBA, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007). After all, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).[6]

### D. Appointment of Lead Counsel and Steering Committees

*Plaintiffs' Statement.* Plaintiffs believe that a balance should be struck between having sufficient resources to litigate this case on the one hand, and on the other hand, doing so efficiently. Plaintiffs believe this can best be achieved with a structure on the Plaintiffs' side of the case with a 2-3 firms appointed as Co-Lead Counsel and/or a Liaison Counsel, and anticipate requesting that the Court appoint an Executive Committee of a few well qualified firms to assist with discrete tasks as assigned by Co-Lead Counsel. The role of Lead Counsel will be to oversee the litigation and make strategic decisions, assign necessary litigation tasks, interact with Defendants' counsel, handle court appearances and perform other general duties typically performed by lead counsel in multidistrict litigation cases. The role of an Executive Committee will be to help administer, supervise and perform specific litigation tasks at the direction of Lead Counsel. The role of the Liaison Counsel shall be to serve as the intermediary between the Plaintiff's leadership team, the Court, and the larger group of Plaintiffs' counsel. The specific duties and obligations of any leadership structure will be specified in a proposed order.

While some of Plaintiffs' counsel have conferred in an effort to obtain a consensus for the appointment of interim Co-Lead Counsel, should no agreement be reached prior to the November 3 hearing, Plaintiffs propose the shortened briefing schedule for lead counsel applications set forth in Exhibit A.

*Defendants' Statement.* Because O'Melveny & Myers LLP ("O'Melveny") represents all Defendants in this case, the Court need not appoint lead counsel or liaison counsel for this case. If the Court intends to appoint liaison counsel for defendants in this MDL to coordinate with, but not bind, other Defendants,

---

[6] At a minimum, Defendants should be afforded an opportunity to brief the issue of a discovery stay. Defendants will discuss with Plaintiff if any discovery activities are warranted during the stay, such as the negotiation of a protective order.

Defendants request that the Court appoint Daniel Petrocelli and Jeffrey A. Barker of O'Melveny to serve in this position. Plaintiff does not object to this request.

### E. Timing of Settlement Conferences and Class Certification Briefing

Plaintiff does not believe that there are any barriers which currently prevent her from beginning discussions with Defendants aimed at resolving or settling this case, so long as certain discovery took place in order to make those discussions meaningful and informed. However, Plaintiff is aware that Defendants may want to first engage in motion practice, including contested dispositive and class certification motion practice, before agreeing to participate in such discussions.

Defendants respectfully submit that settlement discussions and class certification briefing are premature.

## VI. OTHER SIGNIFICANT ISSUES

### A. Related Cases

One more related case in state court exists that is not currently pending before this Court: *Lake v. Top Rank, Inc., et al.*, Case No. 1522-CC10590 (Cir. Ct. St. Louis, Mo.). Defendants intend to remove the *Lake* action to federal court and file a request with the JPML to have the action transferred to this Court.

Dated: October 9, 2015

          Respectfully submitted,

          DANIEL PETROCELLI
          JEFFREY A. BARKER
          DAVID MARROSO
          O'MELVENY & MYERS LLP

          By: /s/ Jeffrey A. Barker
               Jeffrey A. Barker

*Attorneys for Defendants Top Rank, Inc., Robert Arum, Todd duBoef, Emmanuel Pacquiao, and Michael Koncz*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ZACHARY WEST
THE BERMAN LAW GROUP

By: /s/ Zachary West
       Zachary West

*Attorneys for Plaintiff Terrence Jackson*

## **ATTESTATION**

I hereby attest that the other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  October 9, 2015             O'MELVENY & MYERS LLP

                                    By:   /s/ Jeffrey A. Barker
                                              Jeffrey A. Barker